**From:** "Pflugrath, William (USANM)" <William.Pflugrath@usdoj.gov>
**Date:** January 13, 2015 at 5:46:57 PM MST
**To:** "Jason Bowles (jason@bowles-lawfirm.com)" <jason@bowles-lawfirm.com>
**Subject: Mondragon CI Service - Equitable Relief Does Not Appear Appropriate**

Jason,

Thank you for your patience.  I spoke w/ Agent Jason Reily tonight who confirmed Mr. Mondragon was enrolled as a CI for a couple of years while F&W was investigating Mike Archuleta.  Agent Delivan Roper assumed the case in 2012 when Reily transferred to Florida.  Roper said he did not use Mondragon as a CI, so he would have been used as a CI probably in the approximate 2009-2012 range.

While serving as a CI, he was paid $2,000 per month in those months in which he provided useful information.  He was not paid the full amount every month.  Reily ran Mondragon's identifying information in NCIC before enrolling him as a CI; however, Mondragon's 2004 felony state conviction for aggravated assault came up as "no disposition."  The agent failed to follow through and confirm whether there was an adjudication.  I concede that Reily should have followed up on the NCIC report, but he said that Mondragon never volunteered his status as a prohibited person either.

Mondragon also provided some support to a theft investigation headed by DOE.

During the Archuleta investigation period, Mondragon also supported Agent Alex Rodriguez.  In Rodriguez's case, the two of them posed as hunters in a UC capacity and Rodriguez provided Mondragon 22 swift ammo.  Again, the agent should not have done that and his ignorance stems from his failure to follow-up to confirm the result of the NCIC-listed charge.

Reily denies giving Mondragon ammo or money to buy ammo.  I appreciate there may be a conflict there, or an explanation that someone else did give him ammo (such as Rodriguez).

With respect to an equitable defense, it exists if there was a pattern of conduct by officers that reasonably would have led Mondragon to believe he was excused from the legal prohibition against him possessing ammo and firearms.  That is, would a reasonable person be justified in thinking that an exception to law had been made and was continuing?

I believe Mondragon knew he was not permitted to possess firearms or ammo.  I do not think his status made that much difference to him.  Although we do not have evidence that he possessed a functional firearm that we can prove to a jury, it would be tricky to say there is <u>no</u> evidence.  For example, there is the video of him holding a rifle pointing up, and then when the camera pans to the upper branches of a tree, there is a report of a rifle, and a cougar falls from the tree seconds later.  This strongly suggested he possessed a weapon.  There also are the photos of him posing next to trophies in the field, and while those may be simulated weapons, it stretches credulity that a hunter and guide like Mondragon would be caught with a blue training gun in the field.  It would be like carrying toy hand grenades on a combat patrol.  Even if he had not shot those rifles, his hand on a firearm should have been avoided like a hand placed on molten, glowing-hot steel.  And to permit someone to take photos of him holding what appears to be a firearm is visual contempt of his status.

Even if the agents did give him some ammo in 2012 or before, his text message discusses it was "issued" to him.  That is, given to him under authority for a purpose.  In the video showing Mondragon buying ammo at the sporting goods store, there is no suggestion he was being "issued" those rounds or otherwise acting on behalf of federal agents.  Plus, since his time as a CI, he was convicted of a federal felony, so there is no question he knew he was banned from possessing bullets or guns.

Therefore, he certainly may file a motion to withdraw from the plea.  I will oppose it because I do not think that an equitable argument based on limited agent conduct (albeit inappropriate) would have caused Mondragon to reasonably believe he had some legal dispensation to thereafter acquire and use firearms and ammo, especially despite the recent federal theft conviction.  I am glad to discuss the case further and to consider any additional issues he may wish to raise.  I owed you an investigation and I trust I have addressed his claim.  Otherwise, I suggest we proceed to sentencing.

VR, Bill

**Bill Pflugrath**
Assistant United States Attorney
District of New Mexico
**(505) 224-1493**